# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

KRISTI GINN,                          )
                                      )
          **Plaintiff,**        )
                                      )
          **v.**                )    **Case No. CIV-18-392-RAW-SPS**
                                      )
**COMMISSIONER of the Social**        )
**Security Administration,**          )
                                      )
          **Defendant.**        )

## REPORT AND RECOMMENDATION

The claimant Kristi Ginn requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty years old at the time of the most recent administrative hearing (Tr. 40, 259).  She completed high school, and she has worked as a fast food manager (Tr. 97, 304).  The claimant alleges she has been unable to work since April 27, 2015, due to neck pain with radiculopathy, back pain with radiculopathy, depression, chronic pain, and sleep problems (Tr. 303).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on April 27, 2015.  Her application was denied.  ALJ Edward L. Thompson held an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 10, 2017 (Tr. 23-33).  The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), but that she could only frequently reach overhead bilaterally, although she had unlimited ability to reach in all other directions; occasionally climb ramps/stairs, stoop, kneel, crouch; never climb ladders/ropes/scaffolds or crawl; and she had unlimited balancing.  Additionally, the ALJ determined that the claimant could

perform simple and some complex tasks (any work with an SVP of 1-5, but not 6-9), could

relate to others on a superficial work basis (brief, succinct, cursory, concise communication

relevant to the task being performed), and she could adapt to a work environment (Tr. 28).

The ALJ then concluded that the claimant was not disabled because there was work she

could perform, *e. g.*, document scanner, touch-up screener, film touch-up inspector (Tr. 31-

32).

### Review

The claimant contends that the ALJ erred by: (i) failing to properly evaluate the

opinion of consultative examiner Dr. Nancy Barton, Ph.D., (ii) failing to account for her

neck pain and limited range of motion, and (iii) failing to properly consider her workers'

compensation award and disability rating. The undersigned Magistrate Judge agrees that

the ALJ failed to properly evaluate the evidence of record, and the decision of the

Commissioner should therefore be reversed.

The ALJ found that the claimant had the severe impairments of degenerative disc

disease, depression, and anxiety (Tr. 25). The medical evidence relevant to this appeal

reveals that the claimant experienced a work-related injury in October 2009, to her neck

and back. She then underwent ACDF, cervical post laminectomy syndrome, cervical

selective nerve root block, and thoracic laminectomy for placement of dorsal column

stimulator (Tr. 29, 415, 424-428, 482). Although some procedures provided some relief,

the claimant continued to report back and neck pain (Tr. 431). As far back as 2012, the

records reflects the claimant had a permanent lifting restriction of ten pounds (Tr. 411, 431,

466). That same year, Dr. Douglas Kaplan opined that the claimant would require ongoing

chronic pain management for chronic daily headaches and neck pain (Tr. 437). In January 2014, the claimant underwent installation of a surgical spinal cord stimulator, but it became infected and had to be removed in April 2014 (Tr. 504-505, 540). On June 2014, she was released with maximal medical improvement with instructions to follow up for pain management (Tr. 544). Dr. James Odor completed a form indicating that the claimant's maximum medical improvement included a ten-pound lifting restriction, as well as restrictions related to walking, sitting, standing, bending, and twisting. She was instructed to not crawl or climb at all (Tr. 545). Treatment notes reflect the claimant continued to report neck, back, and bilateral extremity pain (Tr. 680, 791).

An October 2014 workers' compensation evaluation reflected that there were objective findings in the record related to the claimant's loss of range of motion, weakness, and trigger point formation in the cervical, thoracic, and lumbar spine, and that she would need continued care for chronic pain management and for her depression (Tr. 673-674). The claimant's pain management doctor made repeated notations that the claimant's condition had changed for the worse and that she needed a repeated CT-myelogram or cervical MRI (Tr. 796, 803, 806, 898). Physical examination on January 9, 2015 revealed limitations of range of motion of the cervical, thoracic, and lumbar spine (Tr. 847). A similar exam on December 23, 2015 again revealed limited range of motion of the cervical and lumbosacral spine (Tr. 863). In this same exam, the physician noted the claimant had a 64% permanent partial disability to the whole person for injury to the neck, back, and psychological overlay (Tr. 864).

On August 26, 2015, Dr. Nancy Barton, Ph.D., conducted a mental status evaluation of the claimant. She noted the claimant reported an inability to work but that the claimant attributed this inability more to physical impairments than mental impairments (Tr. 725). Dr. Barton found that the claimant was likely able to perform some work-related mental activities, such as the ability to understand and remember, but that the claimant may experience difficulty with concentration, persisting with difficult tasks, socially interacting, and adapting to the demands of a work environments, due to her physical issues (Tr. 725). She assessed the claimant with adjustment disorder with mixed anxiety and depressed mood, chronic (Tr. 725).

On May 24, 2016, the Workers' Compensation Court in Oklahoma noted a July 31, 2015 finding that the claimant had sustained a 64% permanent partial disability to the body as a whole and awarded benefits (Tr. 279-285).

State reviewing physicians determined that, as to her physical impairments, she could perform sedentary work, but that she could only occasionally climb ramps/stairs/ladders/ropes/scaffolds, stoop, kneel, crouch, or crawl (Tr. 145-146, 165-166).

As to her mental impairments, state reviewing physicians acknowledged reviewing Dr. Barton's opinion, but themselves did not refer to her concerns regarding the claimant's ability to concentrate, persist with difficult tasks, socially interact, or adapt to a work environment (Tr. 143-144, 164). They found the claimant was moderately limited in the three typical areas of ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 148-149, 168-169). The physicians concluded that the claimant could perform simple and some complex

tasks, relate to others on a superficial work basis, and adapt to a work situation (Tr. 149, 169).

In his written opinion, the ALJ summarized the claimant's testimony and the medical records from April 2015 through March 2016 when her insured status expired. In discussing the opinion evidence, the ALJ noted the claimant's history going back to 2009, and that the relevant medical records included continued complaints of neck and back pain (Tr. 29). He then summarized portions of Dr. Barton's report, including the claimant's report of activities, and that Dr. Barton found normal attention, concentration, and memory, and that the claimant had good eye contact (Tr. 29-30). He did not mention or discuss Dr. Barton's concerns related to the claimant's ability to work, nor did he evaluate or assign any kind of weight to this opinion. In discussing the evidence, the ALJ focused on the claimant's report that her problems were more physical than mental, and again mentioned her good eye contact (Tr. 30). The ALJ noted the Workers' Compensation award, but gave it little weight, stating that findings of disability were issues reserved to the Commissioner (Tr. 30). He then assigned great weight to the opinions of all four state reviewing physicians. The ALJ then concluded that the claimant was not disabled.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent

factors are:   (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).  Here, the ALJ provided a summary of some of Dr. Barton's examination findings, but when he was discussing his RFC assessment, he only referred to a portion of her findings – those indicative that the claimant was capable of work.  He completely ignored the statements immediately following, which call into question the claimant's ability to persist in concentration, persist with difficult tasks, socially interact, and adapt to the demands of a work environment given her physical impairments.  Moreover, he wholly failed to properly evaluate her opinion in accordance with the *Watkins* factors.  The undersigned Magistrate Judge finds that such picking and choosing is inappropriate and indicates a failure to conduct the proper analysis.   *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.").

Next, the claimant contends that the ALJ erred in failing to account for her neck pain and limited range of motion.  The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*,

-8-

laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)."  Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination."  *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003).  Here, the ALJ ignored all the medical evidence prior to 2015, despite the evidence of permanent lifting restrictions, and multiple findings of limited range of motion.  *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two.  He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion].  Indeed, the ALJ provided a cursory acknowledgment of the claimant's medical history but appeared to focus solely on records with positive findings regarding the claimant's physical impairments in a deliberate attempt to pick and choose among the evidence in order to avoid finding the claimant disabled.  *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report

is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].   This was error. Instead, the ALJ should have explained why the claimant's severe physical impairments, supported by repeated treating and consultative physician opinion findings, did not call for corresponding limitations in the RFC.  *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984).

Finally, although an ALJ is not required to give controlling weight to another agency's disability ratings, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), he *is* required to determine the proper weight to give such findings by applying the factors in 20 C.F.R. §§ 404.1527, 416.927.  This is particularly important where, as here, most of the claimant's treatment records were in the context of her workers' compensation claim and the injuries were considered over a number of years and in combination.  Here, the ALJ simply assigned it "very little weight" without any real analysis.  *See Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("The [ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."); Soc. Sec. Rul. 96-5p,

1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). The undersigned Magistrate Judge finds this to be in error.

Because the ALJ failed to properly consider the consultative and "other source" opinions, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 2nd day of March, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**